<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMUEL NYANTENG,<br><br>        Plaintiff,<br><br>v.<br><br>JOHN S. THOMPSON, *et al.*,<br><br>        Defendants. | Case No. 2:21-cv-10390 (BRM) (JRA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

  Before the Court is Defendants John S. Thompson ("Thompson"), Scott A. Stevens ("Stevens"), Joseph Jakubiec ("Jakubiec"), James Morrissey ("Morrissey"), Paulo Correia ("Correia"), Randi Borgen ("Borgen"), Christopher Kaley ("Kaley"), and Arthur Clarke's ("Clarke") (collectively, "Defendants") Motion to Dismiss (ECF No. 21) Plaintiff Samuel Nyanteng's ("Nyanteng") Complaint (ECF No. 1) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] Nyanteng filed an opposition to the Motion (ECF No. 29), and Defendants filed a reply (ECF No. 31). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, the Motion to Dismiss is **GRANTED**.

---

[1] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

I.  **BACKGROUND**

For purposes of a motion to dismiss for failure to state a claim, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Nyanteng. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court applies this same standard on a motion to dismiss for lack of standing. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party.") (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). When ruling on a motion to dismiss, a district court generally "may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d. Cir. 1985). However, documents "*integral to or explicitly relied* upon in the complaint" may be considered "without converting the motion into one for summary judgment." *Id.* (citing *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)); *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputably [sic] authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

At all relevant times, Nyanteng was an immigration services assistant for the United States Citizenship and Immigration Services ("USCIS"). (ECF No. 1 ¶ 16.) Nyanteng brings this suit against several federal officials for allegedly violating his constitutional rights in connection with his indictment for false swearing and other related charges. (*Id.* ¶ 37.)

Throughout 2012, Morrissey, an Immigration Customs Enforcement ("ICE") agent, had been investigating Maxwell Poku ("Poku") for violations of immigration laws. (Silagi Decl. (ECF

No. 21-2), Ex. 1, Cert. of Probable Cause ¶ 4.)[2] Poku, through his business, had been assisting aliens in the filing of fraudulent immigration documents. (*Id.*) Over the course of the investigation, Morrissey learned Nyanteng had used Poku's services on behalf of Georjet Amoh ("Amoh"). (*Id.* ¶ 6.) On June 5, 2013, Morrissey encountered Nyanteng during an administrative arrest of Amoh. (*Id.* ¶ 11.) During this encounter, "Nyanteng admitted to knowingly signing a fraudulent document for submission to [USCIS] for an application which would otherwise have been denied." (*Id.*)

On January 10, 2014, Jakubiec, a United States Customs and Boarder Protection ("CBP") employee, administered a polygraph test to Nyanteng as part of the process for receiving a promotion to the CBP. (ECF No. 1 ¶¶ 7, 18.) Nyanteng maintains the test was a ruse as part of an investigation related to his filing of the fraudulent application. (*Id.* ¶ 18.) Upon completion of the polygraph, Jakubiec "falsely informed" Nyanteng he failed the polygraph test and, to retain employment, would have to immediately provide a written statement explaining the failure. (*Id.* ¶¶ 20–21.) Nyanteng further asserts Jakubiec threatened him with immediate termination if he consulted with an attorney or left without completing the statement. (*Id.* ¶¶ 21–22.) Nyanteng then wrote a confession, with words purportedly supplied verbatim by Jakubiec, in which he admitted to filing a fraudulent Form I-751 for Amoh. (*Id.* ¶¶ 18, 23.) Jakubiec issued a report about the polygraph test and subsequent confession later that day. (*Id.* ¶ 24.)

Sometime thereafter, Stevens, another CBP employee, gave the report to the Department of Homeland Security's ("DHS") Office of the Inspector General ("OIG") and to the U.S. Attorney's Office for the District of New Jersey ("USAO"), who declined to accept the criminal case for prosecution (*Id.* ¶¶ 8, 25.) On August 5, 2014, Morrissey filed an application with the

---

[2] Per *Pension Benefit,* the Court may consider this exhibit to Defendants' Motion to Dismiss because Nyanteng's claims are based off this document and because he explicitly relies on it in his Complaint. (*See* ECF No. 1 ¶¶ 26–27.)

3

Essex County Prosecutor's Office ("ECPO") for the issuance of an arrest warrant, search warrant, and criminal complaint.[3] (*Id.* ¶¶ 9, 26–29; *see generally* ECF No. 21-2, Exs. 1–2 at 3–16.)[4]

The Certification of Probable Cause and Complaint-Warrant allege Nyanteng committed perjury, N.J. Stat. Ann. § 2C:28-1; false swearing, N.J. Stat. Ann. § 2C:28-2; and conspiracy to submit false statements, N.J. Stat. Ann. § 2C:5-2A(1). Neither document mentions the polygraph test or confession. (*See* ECF No. 21-2, Exs. 1–2 at 3–16.) Rather, all the factual allegations therein predate Nyanteng's January 2014 test. (*Id.*) Soon after the ECPO issued the arrest warrant, search warrant, and criminal complaint, Nyanteng was arrested at his home. (ECF No. 1 ¶¶ 38–39.)

On October 17, 2014, Kaley of ICE testified in state court before a grand jury that Nyanteng filed a fraudulent Form I-751 and had committed the additional offense of bigamy. (*Id.* ¶ 35.) The grand jury returned a three-count indictment charging Nyanteng with falsifying or tampering with records, false swearing, and conspiracy to falsify records. (*Id.* ¶ 37; Silagi Decl. Ex. 3 (ECF No. 21-2) at 17–21.) Following Nyanteng's indictment, Thompson, USCIS District Director of the Newark Office, and Borgen, USCIS Field Office Director of the Newark Office, suspended him. (ECF No. 1 ¶¶ 4, 6, 41.)

---

[3] Plaintiff withdraws his initial allegation that Clarke also issued the application. (ECF No. 29 at 7 n.4.) Plaintiff levies no other allegations against Clarke therefore all claims against Clarke are dismissed.

[4] The Court may also consider these exhibits to Defendants' Motion to Dismiss because Nyanteng's claims are based off these documents and because he explicitly relies on them in his Complaint. (*See* ECF No. 1 ¶¶ 26–30.)

The case proceeded to trial on July 20, 2017, resulting in a hung jury. (ECF No. 21-2, Ex. 4 at 22–25.)[5] The ECPO and Nyanteng ultimately agreed to dismiss the case, citing the interests of judicial economy and an agreement with Nyanteng to forfeit employment with the CBP:

> Since the conclusion of the first trial, there have been numerous motions requiring testimony by Federal Agents and Employees, resulting in extensive travel time and resource expenditure. Given the protracted nature of this case and that the defendant has agreed to forfeit his employment with Custom[s] and Border Protection (see attached), the State believes it is in the interest of justice and judicial economy to dismiss same.

(*Id.* at 23.) The Honorable Verna Leath, J.S.C., dismissed the case with prejudice on May 3, 2019. (*Id.* at 24.)

Several weeks later, on June 17, 2019, Correia of USCIS wrote a letter to Nyanteng to confirm Nyanteng's resignation from USCIS. (ECF No. 1 ¶¶ 5, 50.) Nyanteng denied resigning from USCIS, and he was terminated soon thereafter. (*Id.* ¶ 50.)

On April 28, 2021, Nyanteng filed a five-count Complaint against all Defendants, alleging (1) malicious prosecution and abuse of process under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C § 1983; (2) conspiracy to violate Nyanteng's civil rights under 42 U.S.C. § 1985; (3) violations of the New Jersey Civil Rights Act, N.J. Stat. Ann. §§ 10:6-1 to 2 ("NJCRA"); and (4) negligent and intentional infliction of emotional distress.[6] (ECF No. 1 at 19–26.) On December 27, 2021, Defendants moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 21.) Nyanteng opposed the motion on February 25, 2022. (ECF No 29.) On March 4, 2022, Defendants replied. (ECF No. 31.)

---

[5] Plaintiff explicitly relies on Judge Leath's conclusions in his Complaint. (*See* ECF No. 1 ¶¶ 45–48.)

[6] Plaintiff withdrew the fifth count of "punitive damages." (*See* Pl. Opp'n Br. (ECF No. 29) at 10.)

## II.     LEGAL STANDARD

### A.     Rule 12(b)(1)

Rule 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). An assertion of Eleventh Amendment immunity is a challenge to a district court's subject matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)). When subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff typically bears the burden of persuading the court subject-matter jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). However, because "Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense," and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability. *Christy v. Pa. Tpk. Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1994); *Carter v. City of Phila.*, 181 F.3d 339, 347 (3d Cir. 1999).

In evaluating a Rule 12(b)(1) motion, a court must first determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject-matter jurisdiction in fact, apart from any pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). If the motion is a facial attack, the court "must accept the complaint's allegations as true," *Turicentro v. Am. Airlines*, 303 F.3d 293, 300 n.4 (3d Cir. 2002) (citation omitted), and "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891). In contrast, if the

motion is "a factual attack, the court may consider evidence outside the pleadings." *Gould*, 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir. 1997)). Here, the Motion to Dismiss is a facial attack because Defendants assert they are immune from Nyanteng's claims as pled.

    **B.**    **Rule 12(b)(6)**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 548 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted

unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; the complaint must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F. 4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To avoid dismissal, all civil complaints must set out "sufficient factual matter" to show the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show the allegations of his or her complaints are plausible. *See id.* at 670.

### III. DECISION

Defendants advance four primary arguments in support of their Motion: (1) the Court should not extend the disfavored *Bivens* remedy to the context here (Defs.' Mot. Br. (ECF No. 21-1) at 14–20); (2) Defendants are entitled to qualified immunity (*id.* at 20–28, 32–38); (3) the Court should dismiss Nyanteng's § 1983 and NJCRA claims for the same reasons supporting dismissal

8

of the *Bivens* claims and because § 1983 and NJCRA do not apply to individuals acting under federal law (*id.* at 28–30); and (4) Nyanteng has not pled sufficient facts to support a § 1985 conspiracy claim (*id.* at 30–32). The Court addresses each argument in turn.

### A.     *Bivens* claims (Count 1)

In Count 1, Nyanteng seeks damages from the Defendants under *Bivens* for malicious prosecution and for abuse of process. (ECF No. 1 at 20, ¶ 1–2.) In *Bivens*, the Supreme Court held there was an implied damages remedy for plaintiffs whose constitutional rights were violated by federal agents. 403 U.S. at 397. There, the Supreme Court held the plaintiff was entitled to damages when FBI agents handcuffed him in his own home without a warrant in violation of the Fourth Amendment prohibition against unreasonable search and seizures. *Id.* Since then, the Supreme Court has recognized an implied cause of action involving other constitutional violations in just two other circumstances. In *Davis v. Passman*, 442 U.S. 228, 248–49 (1979), the Supreme Court held the Fifth Amendment Due Process Clause gave an administrative assistant a damages remedy when she was fired by a congressman for gender discrimination. In *Carlson v. Green*, 446 U.S. 14, 19 (1980), the Supreme Court held the Eighth Amendment Cruel and Unusual Punishments Clause provided a prisoner's estate with a damages remedy when federal prison officials failed to provide him adequate medical treatment.

*Bivens*, *Davis*, and *Carlson* "represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). Indeed, the Supreme Court has cautioned against expanding *Bivens* into new contexts and described it as a "disfavored judicial activity." *Id.* at 1857 (citing *Iqbal*, 556 U.S. at 675). The Supreme Court in *Abbasi* elaborated the following inexhaustive list of "special factors" under which a case may present a new *Bivens* context:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860. The Supreme Court focused the "special factors" inquiry "on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1858.

The parties dispute whether the facts push this case into a new context. Nyanteng primarily argues his claims do not present a new context because the constitutional rights at issue are the same as in *Bivens* and *Davis*. (ECF No. 29 at 19.) The Court disagrees.

Though Nyanteng alleges Fourth and Fifth Amendment violations, the Supreme Court has found new contexts, which do not warrant implied damages, may arise even in cases where the constitutional rights violated are the same as previous *Bivens* cases. *See e.g.*, *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) (declining to extend *Bivens* even where plaintiff alleged the same constitutional right violation as in *Carlson*). Nyanteng's reliance on *Vanderklok v. United States*, 868 F.3d 189 (3d Cir. 2017), to demonstrate courts have "never questioned *Bivens* settled application" to Fourth or Fifth Amendment claims is unavailing. (ECF No. 29 at 19.) In fact, in *Vanderklok*, the Third Circuit specifically noted the Supreme Court's repeated refusal to extend *Bivens* even where defendants face liability under the same "specific clauses of the specific amendments for which a cause of action has already been implied[.]" 868 F.3d at 200; *see also Abbasi*, 137 S. Ct. at 1859 (declining to extend *Bivens* even where plaintiff alleged Fourth Amendment unlawful search, as in *Bivens*, and Fifth Amendment procedural due process, as in *Davis*); *Dalal v. Molinelli*, Civ. A. No. 20-1434, 2021 WL 1208901, at *4 (D.N.J. Mar. 30, 2021)

10

("The mere fact that [plaintiff] brings a Fourth Amendment claim . . . does not mean that a *Bivens* remedy is available.").

Moreover, Nyanteng does not allege the same causes of action as the plaintiff in *Bivens* or *Davis*. *Bivens* involved a claim of illegal search and seizure, whereas Nyanteng submits claims of malicious prosecution and abuse of process. To the extent Nyanteng references search and seizure, he advances only conclusory allegations Defendants "participated in the illegal and unlawful search" of his home without any factual support. (ECF No. 1 ¶ 28.) Furthermore, to the extent Nyanteng argues *Davis* extended *Bivens* to the Equal Protection Clause, Nyanteng misconstrues *Davis*'s Fifth Amendment implication. (ECF No. 29 at 22.) The plaintiff in *Davis* alleged violations of the Fifth Amendment's Due Process Clause, not the Equal Protection Clause. *Davis*, 442 U.S. at 230. This District has previously held claims of malicious prosecution, fabrication of evidence, and conspiracy to violate civil rights presents a new *Bivens* context. *Dalal*, 2021 WL 1208901, at *4 (collecting various prosecutorial misconduct and fabrication of evidence cases). The Court finds no reason to depart from precedent.

Having determined Nyanteng presents a new context, the Court must then examine whether there are "special factors counselling hesitation" against extending *Bivens*. *Abbasi*, 137 S. Ct. at 1857 (citing *Carlson*, 446 U.S. at 18). The Supreme Court has "urged 'caution' before 'extending Bivens remedies into new contexts.'" *Id.* (citing *Malesko*, 534 U.S. at 70). There are two primary special factors courts consider: "[1] the existence of an alternative remedial structure and [2] separation-of-powers principles." *Goldberg v. United States*, Civ. A. No. 17-6024, 2022 WL 833295, at *3 (D.N.J. Mar. 21, 2022) (quoting *Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018)). The existence of alternative remedial structures alone may preclude judicial expansion of *Bivens*, although separation of powers concerns are also essential to the special factors inquiry. *Id.*

"[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863 (citations omitted). "'Alternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). In this case, alternative remedial structures exist for wrongfully prosecuted individuals. 18 U.S.C. § 3006A provides a prevailing defendant in a federal criminal prosecution a remedy for having his attorney's fees and costs covered by the government if he can show "'the position of the United States' in the prosecution 'was vexatious, frivolous, or in bad faith.'" *United States v. Reyes-Romero*, 959 F.3d 80, 84 (3d Cir. 2020) (citing 18 U.S.C. § 3006A)). Defendants also provide a multitude of other available remedies through which Nyanteng may seek redress, to which Nyanteng has not responded. (*See* ECF No. 21-1 at 18 n.6.)

The grand jury indictment also implicates separation of powers concerns. (ECF No. 21-1 at 17.) When, as here, there exist "intervening decisions by independent legal actors," such as a state prosecutor's decision to prosecute or proceed with a grand jury indictment, "an implied cause of action here would pose a greater risk of interference with the other branches of government than it did in *Bivens*." *Dalal*, 2021 WL 1208901, at \*5 (citations omitted). The Supreme Court has elaborated the proper separation of powers inquiry is "whether there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate." *Egbert v. Boule*, 142 S. Ct. 1793, 1798, 1804–05 (2022) (finding "regulating the conduct of agents at the border unquestionably has national security implications, and the risk of undermining border security provides reasons to hesitate before extending *Bivens* into this field"). Here, regulating the conduct of immigration agents similarly risks judicial intrusion into national security. The Court declines

12

to extend the *Bivens* remedy to the present context and, accordingly, Defendants' motion to dismiss Nyanteng's *Bivens* claims in Count 1 is **GRANTED**.[7]

### B. Section 1983 (Count 1) and NJCRA (Count 3)

In addition to his *Bivens* claims in Count 1, Nyanteng also seeks damages from the Defendants under § 1938 for malicious prosecution and for abuse of process in Count 1. (ECF No. 1 at 20, ¶¶ 1–12.) In Count 3, Nyanteng seeks damages under NJCRA. (*Id.* at 22, ¶¶ 19–26.)

Defendants contend because Nyanteng's claims under § 1983 and NJCRA rely on the same factual predicate as the *Bivens* claim and the elements of the § 1983 and NJCRA claims are essentially the same, these claims fail for the same reasons supporting dismissal of the *Bivens* claims, including qualified immunity and failure to state a constitutional claim. (ECF No. 21-1 at 28–29 (citing *Wang v. N.J. State Police*, Civ. A. No. 18-11933, 2019 WL 3887126, at *5 (D.N.J. Aug. 19, 2019) ("[T]he analysis for [p]laintiff's New Jersey Constitutional malicious prosecution claim is the same as the § 1983 analysis.")).) Defendants also argue these claims fail because Nyanteng cannot allege Defendants, who are federal employees, acted "under color" of state law. *Id.* (citing *Davis v. Samuels*, 962 F.3d 105, 115 (3d Cir. 2020) ("All of the defendants here, however, are alleged to be federal actors or to have acted under color of federal law, so the 1983 claim cannot stand."); *Surina v. S. River Bd. of Educ.*, Civ. A. No. 17-2173, 2018 WL 3617970, at *11 (D.N.J. July 30, 2018) ("[J]ust like § 1983, a private right of action under the NJCRA requires the presence of state action.")). Nyanteng provides no counterargument. Accordingly, he fails to state a claim under § 1983 and NJCRA as to all Defendants. Defendants' motion to dismiss Count 3 and the § 1983 claims in Count 1 is therefore **GRANTED**.

---

[7] Because the Court declines to extend *Bivens*, it need not reach Defendants' argument qualified immunity precludes Nyanteng's *Bivens* claims.

### C. Negligent and Intentional Infliction of Emotional Distress (Count 4)

Count 4 of Nyanteng's complaint seeks damages for both negligent and intentional infliction of emotional distress. Defendants argue the Court lacks jurisdiction over Nyanteng's emotional distress claims because the Court lacks subject matter jurisdiction due to sovereign immunity. (ECF No. 21-1 at 32). Nyanteng counters jurisdiction is proper because Defendants have not availed themselves of the "law enforcement proviso" waiver of sovereign immunity. (ECF No. 29 at 50.)

As sovereign, the United States is immune from suit unless it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The Federal Tort Claims Act ("FTCA") provides for the waiver of sovereign immunity of the United States from suit for injuries caused by a federal employee "acting within the scope of his office or employment." *Millbrook v. United States*, 569 U.S. 50, 52 (2013) (citing 28 U.S.C. § 1346(b)(1)). The sovereign immunity waiver applies in limited circumstances, with specific intentional torts—such as malicious prosecution, abuse of process, and any claims arising therefrom—excepted from the waiver. *Id.* (citing 28 U.S.C. § 2680(h)) ("intentional tort exception").[8] The "law enforcement proviso," however, is an exception to the intentional tort exception, extending the waiver of sovereign immunity to intentional torts based on the "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h). The FTCA defines "investigative or law enforcement officer" to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*

---

[8] The Court finds Nyanteng's emotional distress claims arise from his malicious prosecution claims as the emotional distress claims arise from the same nucleus of facts. (ECF No. 1 ¶ 28.)

The Court finds the FTCA's sovereign immunity waiver does not apply because Defendants are not law enforcement officers. The parties do not dispute Defendants acted within the scope of their employment. Nyanteng argues Defendants are *not* law enforcement officers, seemingly disqualifying them from the law enforcement proviso's sovereign immunity waiver. (ECF No. 29 at 50 ("[T]he defendants/federal employees do not qualify to claim law enforcement status.").) Therefore, the FTCA's sovereign immunity waiver does not apply. The United States is the only proper defendant in a case brought under the FTCA, *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008); Nyanteng has not sued the United States, nor does he argue the United States has waived sovereign immunity.

Even had Nyanteng sued the United States as a defendant, the Court would still lack jurisdiction over the FTCA claims because Nyanteng did not exhaust his administrative remedies. *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015). The FTCA forbids a plaintiff from suing the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally decided by the agency in writing." 28 U.S.C. § 2675(a). Nyanteng admits he did not file an administrative tort claim and has therefore failed this "jurisdictional prerequisite." (ECF No. 29 at 10 n.7); *Deutsch v. United States*, 67 F.3d 1080, 1091 (3d Cir. 1995). Defendants' motion to dismiss Count 4 is therefore **GRANTED.**

### D.     Section 1985 Conspiracy (Count 2)

In Count 2, Nyanteng alleges Defendants conspired to deprive Nyanteng of the "free exercise and enjoyment of the rights and privileges and equal protection of the law secured to him" by the Constitution. (ECF No. 1 at 22 ¶ 15.) Conspiracies by those acting under color of federal law to commit civil rights violations by depriving persons of the rights or privileges guaranteed by the Constitution are governed by 42 U.S.C. § 1985(3). *Davis v. Samuels*, 962 F.3d 105, 115 (3d

15

Cir. 2020). To establish a *prima facie* § 1985(3) case, Nyanteng must show Defendants: (1) conspired; (2) were motivated by discriminatory racial animus designed to deprive Nyanteng of equal protection of the laws; (3) acted in furtherance of the conspiracy; and (4) injured or deprived Nyanteng of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citations omitted).

Defendants argue Nyanteng fails to allege the *prima facie* conspiracy claim. (ECF No. 21-1 at 31.) A court may infer the existence of a conspiracy from evidence of relevant facts "from which it appears as a reasonable and logical inference [] that the activities of the participants . . . could not have been carried out except as the result of some preconceived scheme or common understanding." *United States v. Mosberg*, 866 F. Supp. 2d 275, 301–02 (D.N.J. 2011) (alteration in original) (citations omitted). Here, Nyanteng has not alleged any specific facts from which a reasonable inference of a preconceived scheme can be drawn. Further, Nyanteng's sole support for discriminatory racial animus is the entirely conclusory allegation Defendants "conspired with each other due to and based upon [Nyanteng's] country of origin." (ECF No. 1 ¶ 34.) Nyanteng alleges "there is nothing else to explain" because Defendant's alleged conspiracy was so clearly motivated by discriminatory racial animus, but this falls short of Nyanteng's evidentiary burden. (ECF No. 29 at 35.) Nyanteng also does not address Defendants' argument his § 1985 claim is untimely. Accordingly, Nyanteng fails to plausibly state a § 1985 conspiracy claim as to all Defendants and Defendants' motion as to Count 2 is therefore **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**. An appropriate order follows.

Dated: July 15, 2022 /s/ *Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**